# EXHIBIT A



**SeiferFlatow**
*Attorneys at Law*

**Elizabeth Vennum**
Attorney
liz@seiferflatow.com

February 6, 2018

<u>**Sent via U.S. Certified Mail**</u>
Infinisource, Inc.
c/o CT Corporation System
160 Mine Lake Ct, Suite 200
Raleigh, NC 27615-6417

RE:     Jill Taylor v. Infinisource North America, LLC, *et al.*

To whom it may concern:

Enclosed, please find the Summons and Complaint to be served on Defendant Infinisource, Inc., in reference to the above-mentioned case.

Sincerely,

Elizabeth Vennum

Enclosure

2319 Crescent Ave, Charlotte, NC 28207
p (704) 512-0606     f (704) 314-0677
www.seiferflatowlaw.com
Licensed in North Carolina

Case 3:18-cv-00124-FDW-DSC    Document 1-1    Filed 03/14/18    Page 2 of 57

# STATE OF NORTH CAROLINA

MECKLENBURG _____ County

File No. 18 CVS 2398

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff**<br>Jill Taylor | |
| **Address**<br>c/o SciferFlatow, PLLC, 2319 Crescent Ave | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **City, State, Zip**<br>Charlotte      NC      28207 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| **Name Of Defendant(s)**<br>Infinisource North America, LLC;<br>Infinisource, Inc.; | **Date Original Summons Issued** |
| Infinisource Holdings, Inc.;<br>iSolved HCM, LLC; and iSolved Network, LLC. | **Date(s) Subsequent Summons(es) Issued** |

## To Each Of The Defendant(s) Named Below:

| | |
|---|---|
| **Name And Address Of Defendant 1**<br>Infinisource, Inc.<br>c/o C T Corporation System<br>160 Mine Lake Ct, Ste 200<br>Raleigh      NC      27615-6417 | **Name And Address Of Defendant 2** |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)**<br>Mathew Flatow<br>SciferFlatow, PLLC<br>2319 Crescent Avenue<br>Charlotte, NC 28207 | **Date Issued** 2.7.18   **Time** 10:13  ☒ AM  ☐ PM<br>**Signature**<br>☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

| | |
|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Date Of Endorsement**   **Time**   ☐ AM  ☐ PM<br>**Signature**<br>☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

## ──── RETURN OF SERVICE ────

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

| Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with) |
|---|
| |

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

| Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with) |
|---|
| |

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| **Date Received** | **Name Of Sheriff (type or print)** |
| | |
| **Date Of Return** | **County Of Sheriff** |
| | |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA ~~FILED~~    IN THE GENERAL COURT OF JUSTICE

COUNTY OF MECKLENBURG    SUPERIOR COURT DIVISION

2018 FEB -7 A 10: 11    18-CVS-2398

| | | |
|---|---|---|
| Jill Taylor, | | |
| | MECKLENBURG CO., C.S.C. | |
| | Plaintiff, | |
| | BY_____ | |
| | | |
| **v.** | | |
| | | |
| Infinisource North America, LLC, | | **COMPLAINT** |
| Infinisource, Inc., | | **(Jury Trial Demanded)** |
| Infinisource Holdings, Inc., | | |
| iSolved HCM, LLC, | | |
| and | | |
| iSolved Network, LLC | | |
| | | |
| Defendants. | | |

Plaintiff, Jill Taylor, by and through the undersigned counsel, hereby brings this action against Defendants Infinisource North America, LLC, Infinisource, Inc., Infinisource Holdings, Inc., iSolved HCM, LLC, and iSolved Network, LLC ("Defendants") to recover unpaid overtime pay, liquidated damages, attorney's fees, and costs from the Defendants pursuant to §216(b) of the federal Fair Labor Standards Act of 1938 as amended, 29 USC §§ 201 *et seq*. ("FLSA"), for Defendants' willful violation of the FLSA.

### Parties, Jurisdiction and Venue

1.     **Plaintiff, Jill Taylor (hereinafter, "Plaintiff")** is a citizen and resident of South Carolina who worked for Defendants at their principal office in Charlotte, North Carolina from August 2015 through March 2017.

2.     **Defendant, Infinisource North America, LLC** is a Delaware limited liability

1

corporation authorized to do business in the State of North Carolina and with its principal place of business located at 13024 Ballantyne Corporate Place, Charlotte, North Carolina 28277.

3.     **Defendant Infinisource, Inc.,** is a Michigan corporation duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

4.     On September 29, 2016, **Defendant Infinisource North America, LLC,** through its sole member, **Defendant Infinisource, Inc.,** amended its certificate of authority with the North Carolina Secretary of State to change its name from Infinisource North America, LLC to **iSolved Network, LLC.**

5.     **Defendant iSolved Network, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

6.     **Defendant Infinisource, Inc.,** is the sole member of **Defendant iSolved Network, LLC.**

7.     **Defendant iSolved HCM, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

8.     **Defendant, Infinisource Holdings, Inc.** is a Delaware corporation duly authorized to conduct business in the State of North Carolina, with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

9.     Defendants Infinisource North America, LLC, Infinisource, Inc., iSolved Network, LLC, iSolved HCM, LLC, and Infinisource Holdings, Inc., (hereinafter, collectively, the "Company"), constitute a single enterprise or joint employer because they have owners in

2

common, share the same principal office address, share resources, each operate as an alter ego of one another.

10.    All Defendants have their principal office in the same location: 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

11.    Defendant Infinisource, Inc., lists its officers with the North Carolina Secretary of State as follows:

      a.    David Dawson, Chief Executive Officer;

      b.    Dean Jacobson, Vice President;

      c.    Jody Oliver, President; and

      d.    Shane Whittington, Secretary and Chief Financial Officer.

12.    Defendant iSolved Network, LLC, lists is managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

13.    Defendant iSolved HCM, LLC, lists its managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

14.    Defendant Infinisource Holdings, Inc., lists its officers with the North Carolina Secretary of State as follows:

      a.    David Dawson, Chief Executive Officer;

      b.    Dean Jacobson, Vice President, Secretary, and Director; and

      c.    Shane Whittington, Chief Financial Officer.

15.    Upon information and belief, a common thread exists regarding the individuals who control the operations of Defendants, as listed with the North Carolina Secretary of State.

16.    Defendant Infinisource Holdings, Inc. describes itself in its North Carolina Secretary of State filing as the holding company for various companies providing human capital

3

management.

17.     Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC, describe themselves in their North Carolina Secretary of State filings as providing payroll and human capital management services.

18.     Upon information and belief, Defendant Infinisource Holdings, Inc., is the holding company for Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC.

19.     On Defendant iSolved HCM, LLC's website, the biography of the chief commercial officer identifies the Infinisource entities and the iSolved entities as "sister companies."

20.     Although Plaintiff was employed working with the iSolved suite of services, her paycheck was issued by Infinisource, Inc.

21.     This Honorable Court has jurisdiction over this matter pursuant to N. C. Gen. Stat. § 7A-243 in that this is a civil action in which the amount in controversy exceeds twenty-five thousand dollars ($25,000.00).

22.     Venue is proper in Mecklenburg County because a substantial part of the events at issue took place in Mecklenburg County and the Company's principal place of business is located in Mecklenburg County.

## Applicability of the Fair Labor Standards Act

23.     At all times relevant herein, the Company comprised an enterprise engaged in interstate commerce, with gross annual sales of at least $500,000.00.

24.     At all times relevant herein, Plaintiff was an employee of the Company within the meaning of 29 U.S.C. §207(a)(1).

4

## Factual Background

25.     The Company provides benefits services, including payroll and human capital management services, to small and mid-sized businesses (hereinafter, "customers").

26.     One category of products the Company offers to its customers is workforce management software used to facilitate payroll, human resources, and time-tracking.

27.     The Company serves customers located within and out of the State of North Carolina.

28.     Plaintiff began working for the Company in August of 2015 as a Payroll Subject Matter Expert ("Payroll SME"), at a pay rate of $24.05 per hour.

29.     In April of 2016, the Company informed Plaintiff that she was getting a raise and would begin earning $24.64 per hour; however, after the processing of the raise, Plaintiff's wage only increased to $24.27 per hour.

30.     The Company classified Plaintiff as an administrative employee, exempt from overtime pay, and paid Plaintiff her regular hourly rate for a set number of hours per week, regardless of the number of hours Plaintiff worked.

31.     As explained herein, Plaintiff's role as a Payroll SME did not involve management or consulting on business decisions, did not allow her the autonomy to choose what work to perform, or even how and when to perform her assigned work, and did not provide her with the authority to make business decisions.

32.     During Plaintiff's employment, the Company revised Plaintiff's job description to include language that indicated her position held the type of discretion and independent judgment necessary for classification as an exempt administrative employee, despite the Company's prohibiting Plaintiff from exercising such discretion and independent judgment, as described herein.

5

33.	Upon information and belief, the Company revised Plaintiff's job description in the above-referenced manner in an attempt to avoid liability for unpaid overtime.

34.	When SMEs such as Plaintiff ran into issues with customers, Company protocol mandated that they escalate problems to management for resolution.

35.	If a customer requested additional products or services beyond their current software package, Company protocol required Plaintiff to refer the customer back to the sales department.

36.	As a Payroll SME, Plaintiff provided instruction and technical support to customers regarding importing their payroll into the Company's software.

37.	Plaintiff did not advise customers on personnel issues or general business matters.

38.	When the Company negotiated and signed a contract with a customer, it would assign the customer to one of several Implementation Teams who carried out the work of setting up the customer's chosen software package and training the customer to use the system.

39.	Each Implementation Team was made up of SMEs in Payroll, Benefits, and Time, under the leadership of a Project Manager.

40.	As a Payroll SME member of an Implementation Team, Plaintiff did not participate in negotiating sales or contracts with customers, rather her team delivered the products and services the customer had purchased.

41.	The Project Manager of each team was responsible for making sure the various SMEs followed the Company's implementation guidelines for their respective duties, remained on track to meet deadlines, and delivered appropriate customer service.

42.	When the Company assigned clients to an Implementation Team, the Team was typically given an implementation timeline of either sixty (60) or ninety (90) days, ending on a

6

"go live" date, by which the Company expected the customer to be up and running on the Company's platform.

43.    The Company issued detailed instructions for every aspect of the implementation process, including flow charts, process guides, checklists, and "workflows," which were week-by-week breakdowns of itemized tasks, such as when to schedule phone calls with clients and what information to discuss on the calls.

44.    The Company required all Implementation Teams to adhere to these schedules in order to meet "go live" deadlines the Company had promised to customers.

45.    Sarah Ufen, the Project Manager for Plaintiff's Implementation Team, created and implemented even more specific timelines for Plaintiff and her team, in some cases detailing not only the date but the time of day by which each step of a task must be completed.

46.    Plaintiff did not have the authority to deviate from or waive the procedures established by the Company or Ufen.

47.    Plaintiff was under the constant supervision of Ufen, and the Company expected Plaintiff to participate in weekly one-on-one meetings with Ufen and provide Ufen with detailed written updates on her progress.

48.    In order to keep up with the Company's demands and strict timelines for onboarding customers, Plaintiff had to work more than forty (40) hours per week.

49.    At a minimum, Plaintiff worked from 8:00 a.m. to 8:00 p.m. Monday through Friday every week with few exceptions.

50.    Many weeknights Plaintiff had to work until midnight or 1:00 a.m. in order to meet deadlines set by the Company and/or Ufen.

51.    Upon information and belief, the Company did not keep precise records of

7

Plaintiff's time as required by 29 CFR §516.2, despite the fact that Plaintiff was an employee paid an hourly wage.

52.     In the days leading up to a deadline, Ufen, would push Plaintiff to meet the goal, often requiring around-the-clock work.

53.     Two such instances of around-the-clock work include the times periods of November 3-4 and November 13-14, 2016, when Plaintiff worked forty-eight (48) hour periods without sleep in order to meet project deadlines.

54.     Plaintiff's friends and family became increasingly worried about the long hours she was working and the fatigue and stress she experienced.

55.     Many times between March of 2016, when Ufen assumed direct control over Plaintiff's Implementation Team, and the end of Plaintiff's employment, Plaintiff explained to Ufen that she was having to work "long hours and...weekends," to keep up with the Company's deadlines.

56.     Ufen demonstrated no concern, and in November of 2016 criticized Plaintiff for taking a lunch break on a day when Plaintiff worked from 8:00 a.m. until 9:30 p.m.

57.     On February 20, 2017, Ufen sent Plaintiff an "Employee Performance Warning/Improvement Plan", detailing instances of Plaintiff's failure to conform to Company protocol, such as:

> a)     Responding to e-mails without permission;
>
> b)     Hanging up on a scheduled conference call after only waiting fifteen (15) minutes for the customer to join, when Plaintiff was calling in from the emergency room with a seriously ill friend;
>
> c)     Not adhering to the outline of dates and times by which specific

8

tasks should be completed;

d)  Declining a scheduling request sent on 4:30 p.m. Friday to set up a meeting that Monday morning; and

e)  Allowing a next day payroll processing to run without obtaining approval.

58.  The Company terminated Plaintiff's employment effective March 2, 2017.

59.  At the time of her termination, Plaintiff had worked approximately one thousand, one hundred and fifteen (1,115) hours of unpaid overtime for the Company, an average of thirteen (13) hours of overtime per week.

## CAUSE OF ACTION
### Failure to Pay Overtime Compensation in Violation of the FLSA
### (All Defendants)

60.  The preceding paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

61.  At all times relevant, Plaintiff was an employee of the Company within the meaning of the FLSA, 29 U.S.C. § 203(e).

62.  At all times relevant, the Company comprised an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 USC §203(s).

63.  Plaintiff Taylor worked more than forty (40) hours of compensable time per week every week, with few exceptions, from August of 2015 through February of 2017.

64.  The Company willfully, in bad faith, and in knowing or reckless violation of the FLSA, classified Plaintiff as "exempt" from overtime even though she had no discretion or opportunity to exercise independent judgment on matters of significance.

65.  The Company willfully, in bad faith, and in knowing or reckless violation of the

9

FLSA, failed to compensate Plaintiff at the federally mandated rate of one and one-half times her regular hourly wage for each hour in excess of forty (40) hours per week.

66.     The Company had actual and/or constructive knowledge of the hours Plaintiff was working due to Ufen's knowledge of the number of compensable hours Plaintiff was required to work in order to meet the Company's and Ufen's deadlines, and Plaintiff was in fact meeting those deadlines.

67.     The Company failed to make, keep, and preserve records of hours worked by Plaintiff in violation of the FLSA, 29 U.S.C. §201, et seq., and 29 CFR 516.2.

68.     The Company's conduct, as set forth herein, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §255(a).

69.     Plaintiff seeks damages in the amount of her unpaid overtime compensation from August 2015 to the present, liquidated damages in an amount equal to that unpaid overtime, plus interest and costs as permitted by the FLSA, 29 USC §§216(b) and 255(a), an amount in excess of $25,000.00.

70.     Plaintiff seeks recovery of attorney's fees and costs to be paid by the Company, as provided by the FLSA, 29 U.S.C. §216(b).

## Prayer for Relief

**WHEREFORE**, Plaintiff, Jill Taylor, prays the Court for the following relief:

1.      For Plaintiff, compensatory damages, *inter alia*, lost wages, in excess of twenty-five thousand dollars ($25,000.00);

2.      That the Court find the Company liable for violating the overtime provisions of the FLSA as to Plaintiff;

3.      For judgment against the Company in an amount equal to Plaintiff's unpaid

overtime at the federally mandated rate;

4.      That the Court find the Company liable for violating the FLSA by failing to maintain accurate time records of all hours worked by Plaintiff;

5.      That the Court finds the Company's violations of the FLSA as set forth herein to be willful;

6.      For an award to Plaintiff in the amount of unpaid overtime owed, liquidated damages, and penalties as provided by law, with interest thereon, in an amount to be proved at a trial of this matter;

7.      For an award of reasonable attorney's fees and costs pursuant to 29 USC § 216;

8.      For an award of pre-judgment interest;

9.      For such and further relief as the Court deems just and proper.

THIS THE _____ DAY OF FEBRUARY, 2018.

SEIFERFLATOW, PLLC

By: _____
MATHEW E. FLATOW
NC State Bar No. 35282

By: _____
ELIZABETH K. VENNUM
NC State Bar No. 49747
Attorneys for Plaintiff Jill Taylor
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

11



**SeiferFlatow**
*Attorneys at Law*

**Elizabeth Vennum**
Attorney
liz@seiferflatow.com

February 6, 2018

**Sent via U.S. Certified Mail**
iSolved Network, LLC
c/o CT Corporation System
160 Mine Lake Ct, Suite 200
Raleigh, NC 27615-6417

RE:   Jill Taylor v. Infinisource North America, LLC, *et al.*

To whom it may concern:

Enclosed, please find the Summons and Complaint to be served on Defendant iSolved Network, LLC, in reference to the above-mentioned case.

Sincerely,

Elizabeth Vennum

Enclosure

2319 Crescent Ave, Charlotte, NC 28207
p (704) 512-0606    f (704) 314-0677
www.seiferflatowlaw.com
Licensed in North Carolina

Case 3:18-cv-00124-FDW-DSC   Document 1-3   Filed 03/14/18   Page 16 of 57

# STATE OF NORTH CAROLINA

MECKLENBURG _____ County

File No. 18 CVS 2398

In The General Court Of Justice
☐ District   ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff** | |
| Jill Taylor | |
| **Address** | |
| c/o SeiferFlatow, PLLC, 2319 Crescent Ave | |
| **City, State, Zip** | |
| Charlotte         NC      28207 | |

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

## VERSUS

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| **Name Of Defendant(s)** | **Date Original Summons Issued** |
| Infinisource North America, LLC; | |
| Infinisource, Inc.; | **Date(s) Subsequent Summons(es) Issued** |
| Infinisource Holdings, Inc.; | |
| iSolved HCM, LLC; and iSolved Network, LLC. | |

**To Each Of The Defendant(s) Named Below:**

| | |
|---|---|
| **Name And Address Of Defendant 1** | **Name And Address Of Defendant 2** |
| iSolved Network, LLC | |
| c/o C T Corporation System | |
| 160 Mine Lake Ct, Ste 200 | |
| Raleigh         NC      27615-6417 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)** | **Date Issued** 8·7·18   **Time** 10:15 ☒ AM ☐ PM |
| Mathew Flatow | **Signature** |
| SeiferFlatow, PLLC | |
| 2319 Crescent Avenue | ☒ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |
| Charlotte, NC 28207 | |

| | |
|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)** | **Date Of Endorsement** **Time** ☐ AM ☐ PM |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Signature** |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

| | RETURN OF SERVICE | |
|---|---|---|

-I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-<del>2398</del>

FILED

2018 FEB -7 A 10: 11

MECKLENBURG CO., C.S.C.

BY_____

Jill Taylor,

Plaintiff,

v.

Infinisource North America, LLC,
Infinisource, Inc.,
Infinisource Holdings, Inc.,
iSolved HCM, LLC,
and
iSolved Network, LLC

Defendants.

**COMPLAINT**
(Jury Trial Demanded)

Plaintiff, Jill Taylor, by and through the undersigned counsel, hereby brings this action against Defendants Infinisource North America, LLC, Infinisource, Inc., Infinisource Holdings, Inc., iSolved HCM, LLC, and iSolved Network, LLC ("Defendants") to recover unpaid overtime pay, liquidated damages, attorney's fees, and costs from the Defendants pursuant to §216(b) of the federal Fair Labor Standards Act of 1938 as amended, 29 USC §§ 201 *et seq.* ("FLSA"), for Defendants' willful violation of the FLSA.

### Parties, Jurisdiction and Venue

1.      **Plaintiff, Jill Taylor (hereinafter, "Plaintiff")** is a citizen and resident of South Carolina who worked for Defendants at their principal office in Charlotte, North Carolina from August 2015 through March 2017.

2.      **Defendant, Infinisource North America, LLC** is a Delaware limited liability

1

corporation authorized to do business in the State of North Carolina and with its principal place of business located at 13024 Ballantyne Corporate Place, Charlotte, North Carolina 28277.

3.     **Defendant Infinisource, Inc.,** is a Michigan corporation duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

4.     On September 29, 2016, **Defendant Infinisource North America, LLC,** through its sole member, **Defendant Infinisource, Inc.,** amended its certificate of authority with the North Carolina Secretary of State to change its name from Infinisource North America, LLC to **iSolved Network, LLC.**

5.     **Defendant iSolved Network, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

6.     **Defendant Infinisource, Inc.,** is the sole member of **Defendant iSolved Network, LLC.**

7.     **Defendant iSolved HCM, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

8.     **Defendant, Infinisource Holdings, Inc.** is a Delaware corporation duly authorized to conduct business in the State of North Carolina, with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

9.     Defendants Infinisource North America, LLC, Infinisource, Inc., iSolved Network, LLC, iSolved HCM, LLC, and Infinisource Holdings, Inc., (hereinafter, collectively, the "Company"), constitute a single enterprise or joint employer because they have owners in

2

common, share the same principal office address, share resources, each operate as an alter ego of one another.

10.     All Defendants have their principal office in the same location: 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

11.     Defendant Infinisource, Inc., lists its officers with the North Carolina Secretary of State as follows:

        a.     David Dawson, Chief Executive Officer;

        b.     Dean Jacobson, Vice President;

        c.     Jody Oliver, President; and

        d.     Shane Whittington, Secretary and Chief Financial Officer.

12.     Defendant iSolved Network, LLC, lists is managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

13.     Defendant iSolved HCM, LLC, lists its managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

14.     Defendant Infinisource Holdings, Inc., lists its officers with the North Carolina Secretary of State as follows:

        a.  David Dawson, Chief Executive Officer;

        b.  Dean Jacobson, Vice President, Secretary, and Director; and

        c.  Shane Whittington, Chief Financial Officer.

15.     Upon information and belief, a common thread exists regarding the individuals who control the operations of Defendants, as listed with the North Carolina Secretary of State.

16.     Defendant Infinisource Holdings, Inc. describes itself in its North Carolina Secretary of State filing as the holding company for various companies providing human capital

3

management.

17.     Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC, describe themselves in their North Carolina Secretary of State filings as providing payroll and human capital management services.

18.     Upon information and belief, Defendant Infinisource Holdings, Inc., is the holding company for Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC.

19.     On Defendant iSolved HCM, LLC's website, the biography of the chief commercial officer identifies the Infinisource entities and the iSolved entities as "sister companies."

20.     Although Plaintiff was employed working with the iSolved suite of services, her paycheck was issued by Infinisource, Inc.

21.     This Honorable Court has jurisdiction over this matter pursuant to N. C. Gen. Stat. § 7A-243 in that this is a civil action in which the amount in controversy exceeds twenty-five thousand dollars ($25,000.00).

22.     Venue is proper in Mecklenburg County because a substantial part of the events at issue took place in Mecklenburg County and the Company's principal place of business is located in Mecklenburg County.

## Applicability of the Fair Labor Standards Act

23.     At all times relevant herein, the Company comprised an enterprise engaged in interstate commerce, with gross annual sales of at least $500,000.00.

24.     At all times relevant herein, Plaintiff was an employee of the Company within the meaning of 29 U.S.C. §207(a)(1).

4

## Factual Background

25.    The Company provides benefits services, including payroll and human capital management services, to small and mid-sized businesses (hereinafter, "customers").

26.    One category of products the Company offers to its customers is workforce management software used to facilitate payroll, human resources, and time-tracking.

27.    The Company serves customers located within and out of the State of North Carolina.

28.    Plaintiff began working for the Company in August of 2015 as a Payroll Subject Matter Expert ("Payroll SME"), at a pay rate of $24.05 per hour.

29.    In April of 2016, the Company informed Plaintiff that she was getting a raise and would begin earning $24.64 per hour; however, after the processing of the raise, Plaintiff's wage only increased to $24.27 per hour.

30.    The Company classified Plaintiff as an administrative employee, exempt from overtime pay, and paid Plaintiff her regular hourly rate for a set number of hours per week, regardless of the number of hours Plaintiff worked.

31.    As explained herein, Plaintiff's role as a Payroll SME did not involve management or consulting on business decisions, did not allow her the autonomy to choose what work to perform, or even how and when to perform her assigned work, and did not provide her with the authority to make business decisions.

32.    During Plaintiff's employment, the Company revised Plaintiff's job description to include language that indicated her position held the type of discretion and independent judgment necessary for classification as an exempt administrative employee, despite the Company's prohibiting Plaintiff from exercising such discretion and independent judgment, as described herein.

5

33. Upon information and belief, the Company revised Plaintiff's job description in the above-referenced manner in an attempt to avoid liability for unpaid overtime.

34. When SMEs such as Plaintiff ran into issues with customers, Company protocol mandated that they escalate problems to management for resolution.

35. If a customer requested additional products or services beyond their current software package, Company protocol required Plaintiff to refer the customer back to the sales department.

36. As a Payroll SME, Plaintiff provided instruction and technical support to customers regarding importing their payroll into the Company's software.

37. Plaintiff did not advise customers on personnel issues or general business matters.

38. When the Company negotiated and signed a contract with a customer, it would assign the customer to one of several Implementation Teams who carried out the work of setting up the customer's chosen software package and training the customer to use the system.

39. Each Implementation Team was made up of SMEs in Payroll, Benefits, and Time, under the leadership of a Project Manager.

40. As a Payroll SME member of an Implementation Team, Plaintiff did not participate in negotiating sales or contracts with customers, rather her team delivered the products and services the customer had purchased.

41. The Project Manager of each team was responsible for making sure the various SMEs followed the Company's implementation guidelines for their respective duties, remained on track to meet deadlines, and delivered appropriate customer service.

42. When the Company assigned clients to an Implementation Team, the Team was typically given an implementation timeline of either sixty (60) or ninety (90) days, ending on a

6

"go live" date, by which the Company expected the customer to be up and running on the Company's platform.

43.     The Company issued detailed instructions for every aspect of the implementation process, including flow charts, process guides, checklists, and "workflows," which were week-by-week breakdowns of itemized tasks, such as when to schedule phone calls with clients and what information to discuss on the calls.

44.     The Company required all Implementation Teams to adhere to these schedules in order to meet "go live" deadlines the Company had promised to customers.

45.     Sarah Ufen, the Project Manager for Plaintiff's Implementation Team, created and implemented even more specific timelines for Plaintiff and her team, in some cases detailing not only the date but the time of day by which each step of a task must be completed.

46.     Plaintiff did not have the authority to deviate from or waive the procedures established by the Company or Ufen.

47.     Plaintiff was under the constant supervision of Ufen, and the Company expected Plaintiff to participate in weekly one-on-one meetings with Ufen and provide Ufen with detailed written updates on her progress.

48.     In order to keep up with the Company's demands and strict timelines for onboarding customers, Plaintiff had to work more than forty (40) hours per week.

49.     At a minimum, Plaintiff worked from 8:00 a.m. to 8:00 p.m. Monday through Friday every week with few exceptions.

50.     Many weeknights Plaintiff had to work until midnight or 1:00 a.m. in order to meet deadlines set by the Company and/or Ufen.

51.     Upon information and belief, the Company did not keep precise records of

7

Plaintiff's time as required by 29 CFR §516.2, despite the fact that Plaintiff was an employee paid an hourly wage.

52.     In the days leading up to a deadline, Ufen, would push Plaintiff to meet the goal, often requiring around-the-clock work.

53.     Two such instances of around-the-clock work include the times periods of November 3-4 and November 13-14, 2016, when Plaintiff worked forty-eight (48) hour periods without sleep in order to meet project deadlines.

54.     Plaintiff's friends and family became increasingly worried about the long hours she was working and the fatigue and stress she experienced.

55.     Many times between March of 2016, when Ufen assumed direct control over Plaintiff's Implementation Team, and the end of Plaintiff's employment, Plaintiff explained to Ufen that she was having to work "long hours and...weekends," to keep up with the Company's deadlines.

56.     Ufen demonstrated no concern, and in November of 2016 criticized Plaintiff for taking a lunch break on a day when Plaintiff worked from 8:00 a.m. until 9:30 p.m.

57.     On February 20, 2017, Ufen sent Plaintiff an "Employee Performance Warning/Improvement Plan", detailing instances of Plaintiff's failure to conform to Company protocol, such as:

> a)     Responding to e-mails without permission;
>
> b)     Hanging up on a scheduled conference call after only waiting fifteen (15) minutes for the customer to join, when Plaintiff was calling in from the emergency room with a seriously ill friend;
>
> c)     Not adhering to the outline of dates and times by which specific

8

tasks should be completed;

d)     Declining a scheduling request sent on 4:30 p.m. Friday to set up a
       meeting that Monday morning; and

e)     Allowing a next day payroll processing to run without obtaining
       approval.

58.    The Company terminated Plaintiff's employment effective March 2, 2017.

59.    At the time of her termination, Plaintiff had worked approximately one thousand,
one hundred and fifteen (1,115) hours of unpaid overtime for the Company, an average of
thirteen (13) hours of overtime per week.

## CAUSE OF ACTION
### Failure to Pay Overtime Compensation in Violation of the FLSA
### (All Defendants)

60.    The preceding paragraphs are re-alleged and incorporated by reference as though
fully set forth herein.

61.    At all times relevant, Plaintiff was an employee of the Company within the
meaning of the FLSA, 29 U.S.C. § 203(e).

62.    At all times relevant, the Company comprised an enterprise engaged in interstate
commerce within the meaning of the FLSA, 29 USC §203(s).

63.    Plaintiff Taylor worked more than forty (40) hours of compensable time per week
every week, with few exceptions, from August of 2015 through February of 2017.

64.    The Company willfully, in bad faith, and in knowing or reckless violation of the
FLSA, classified Plaintiff as "exempt" from overtime even though she had no discretion or
opportunity to exercise independent judgment on matters of significance.

65.    The Company willfully, in bad faith, and in knowing or reckless violation of the

9

FLSA, failed to compensate Plaintiff at the federally mandated rate of one and one-half times her regular hourly wage for each hour in excess of forty (40) hours per week.

66.     The Company had actual and/or constructive knowledge of the hours Plaintiff was working due to Ufen's knowledge of the number of compensable hours Plaintiff was required to work in order to meet the Company's and Ufen's deadlines, and Plaintiff was in fact meeting those deadlines.

67.     The Company failed to make, keep, and preserve records of hours worked by Plaintiff in violation of the FLSA, 29 U.S.C. §201, et seq., and 29 CFR 516.2.

68.     The Company's conduct, as set forth herein, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §255(a).

69.     Plaintiff seeks damages in the amount of her unpaid overtime compensation from August 2015 to the present, liquidated damages in an amount equal to that unpaid overtime, plus interest and costs as permitted by the FLSA, 29 USC §§216(b) and 255(a), an amount in excess of $25,000.00.

70.     Plaintiff seeks recovery of attorney's fees and costs to be paid by the Company, as provided by the FLSA, 29 U.S.C. §216(b).

### Prayer for Relief

**WHEREFORE**, Plaintiff, Jill Taylor, prays the Court for the following relief:

1.     For Plaintiff, compensatory damages, *inter alia*, lost wages, in excess of twenty-five thousand dollars ($25,000.00);

2.     That the Court find the Company liable for violating the overtime provisions of the FLSA as to Plaintiff;

3.     For judgment against the Company in an amount equal to Plaintiff's unpaid

10

overtime at the federally mandated rate;

4.    That the Court find the Company liable for violating the FLSA by failing to maintain accurate time records of all hours worked by Plaintiff;

5.    That the Court finds the Company's violations of the FLSA as set forth herein to be willful;

6.    For an award to Plaintiff in the amount of unpaid overtime owed, liquidated damages, and penalties as provided by law, with interest thereon, in an amount to be proved at a trial of this matter;

7.    For an award of reasonable attorney's fees and costs pursuant to 29 USC § 216;

8.    For an award of pre-judgment interest;

9.    For such and further relief as the Court deems just and proper.

THIS THE _____7th_____ DAY OF FEBRUARY, 2018.

SEIFERFLATOW, PLLC

By: _____

**MATHEW E. FLATOW**
NC State Bar No. 35282

By: _____

**ELIZABETH K. VENNUM**
NC State Bar No. 49747
**Attorneys for Plaintiff Jill Taylor**
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

11



**Elizabeth Vennum**
Attorney
liz@seiferflatow.com

February 6, 2018

**Sent via U.S. Certified Mail**
Infinisource Holdings, Inc.
c/o CT Corporation System
David Dawson
160 Mine Lake Ct, Suite 200
Raleigh, NC 27615-6417

RE:     Jill Taylor v. Infinisource North America, LLC, *et al.*

To whom it may concern:

Enclosed, please find the Summons and Complaint to be served on Defendant Infinisource Holdings, Inc., in reference to the above-mentioned case.

Sincerely,

Elizabeth Vennum

Enclosure

2319 Crescent Ave, Charlotte, NC 28207
p (704) 512-0606     f (704) 314-0677
www.seiferflatowlaw.com
Licensed in North Carolina

Case 3:18-cv-00124-FDW-DSC   Document 1-1   Filed 03/14/18   Page 30 of 57

# STATE OF NORTH CAROLINA

_____MECKLENBURG_____ County

File No. 18 CVS 2398

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| **Name Of Plaintiff** <br> Jill Taylor | |
| **Address** <br> c/o SeiferFlatow, PLLC, 2319 Crescent Ave | **CIVIL SUMMONS** <br> ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **City, State, Zip** <br> Charlotte        NC      28207 | |

<b>VERSUS</b>

G.S. 1A-1, Rules 3 and 4

| | |
|---|---|
| **Name Of Defendant(s)** <br> Infinisource North America, LLC; <br> Infinisource, Inc.; | **Date Original Summons Issued** |
| Infinisource Holdings, Inc.; <br> iSolved HCM, LLC; and iSolved Network, LLC. | **Date(s) Subsequent Summons(es) Issued** |

### To Each Of The Defendant(s) Named Below:

| **Name And Address Of Defendant 1** | **Name And Address Of Defendant 2** |
|---|---|
| Infinisource Holdings, LLC <br> c/o David Dawson and/or C T Corporation System <br> 160 Mine Lake Ct, Suite 200 <br> Raleigh            NC    27615-6417 | |

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| **Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)** | **Date Issued** | **Time** ☐ AM ☐ PM |
|---|---|---|
| Mathew Flatow <br> SeiferFlatow, PLLC <br> 2319 Crescent Avenue <br> Charlotte, NC 28207 | 2-7-18 | 10:14 |
| | **Signature** | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| | **Date Of Endorsement** | **Time** ☐ AM ☐ PM |
|---|---|---|
| ☐ **ENDORSEMENT (ASSESS FEE)** <br> This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | **Signature** | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

Case 3:18-cv-00124-FDW-DSC   Document 1-1   Filed 03/14/18   Page 31 of 57

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| | |
| Date Of Return | County Of Sheriff |
| | |

AOC-CV-100, Side Two, Rev. 6/16
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA ~~FILED~~          IN THE GENERAL COURT OF JUSTICE

COUNTY OF MECKLENBURG                         SUPERIOR COURT DIVISION
                    2018 FEB -7  A 10: 11          18-CVS-2398

Jill Taylor,                    MECKLENBURG CO., C.S.C.
                                        Plaintiff,
                                  BY_____

                v.


Infinisource North America, LLC,
Infinisource, Inc.,                                    **COMPLAINT**
Infinisource Holdings, Inc.,                       (Jury Trial Demanded)
iSolved HCM, LLC,
and
iSolved Network, LLC

                                Defendants.
_____

        Plaintiff, Jill Taylor, by and through the undersigned counsel, hereby brings this action

against Defendants Infinisource North America, LLC, Infinisource, Inc., Infinisource Holdings,

Inc., iSolved HCM, LLC, and iSolved Network, LLC ("Defendants") to recover unpaid overtime

pay, liquidated damages, attorney's fees, and costs from the Defendants pursuant to §216(b) of

the federal Fair Labor Standards Act of 1938 as amended, 29 USC §§ 201 *et seq.* ("FLSA"), for

Defendants' willful violation of the FLSA.

                        <u>Parties, Jurisdiction and Venue</u>

        1.      **Plaintiff, Jill Taylor (hereinafter, "Plaintiff")** is a citizen and resident of South

Carolina who worked for Defendants at their principal office in Charlotte, North Carolina from

August 2015 through March 2017.

        2.      **Defendant, Infinisource North America, LLC** is a Delaware limited liability

                                        1

corporation authorized to do business in the State of North Carolina and with its principal place of business located at 13024 Ballantyne Corporate Place, Charlotte, North Carolina 28277.

3.     **Defendant Infinisource, Inc.,** is a Michigan corporation duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

4.     On September 29, 2016, **Defendant Infinisource North America, LLC,** through its sole member, **Defendant Infinisource, Inc.,** amended its certificate of authority with the North Carolina Secretary of State to change its name from Infinisource North America, LLC to **iSolved Network, LLC**.

5.     **Defendant iSolved Network, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

6.     **Defendant Infinisource, Inc.,** is the sole member of **Defendant iSolved Network, LLC**.

7.     **Defendant iSolved HCM, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

8.     **Defendant, Infinisource Holdings, Inc.** is a Delaware corporation duly authorized to conduct business in the State of North Carolina, with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

9.     Defendants Infinisource North America, LLC, Infinisource, Inc., iSolved Network, LLC, iSolved HCM, LLC, and Infinisource Holdings, Inc., (hereinafter, collectively, the "Company"), constitute a single enterprise or joint employer because they have owners in

2

common, share the same principal office address, share resources, each operate as an alter ego of one another.

10.    All Defendants have their principal office in the same location: 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

11.    Defendant Infinisource, Inc., lists its officers with the North Carolina Secretary of State as follows:

      a.     David Dawson, Chief Executive Officer;

      b.     Dean Jacobson, Vice President;

      c.     Jody Oliver, President; and

      d.     Shane Whittington, Secretary and Chief Financial Officer.

12.    Defendant iSolved Network, LLC, lists is managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

13.    Defendant iSolved HCM, LLC, lists its managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

14.    Defendant Infinisource Holdings, Inc., lists its officers with the North Carolina Secretary of State as follows:

      a.  David Dawson, Chief Executive Officer;

      b.  Dean Jacobson, Vice President, Secretary, and Director; and

      c.  Shane Whittington, Chief Financial Officer.

15.    Upon information and belief, a common thread exists regarding the individuals who control the operations of Defendants, as listed with the North Carolina Secretary of State.

16.    Defendant Infinisource Holdings, Inc. describes itself in its North Carolina Secretary of State filing as the holding company for various companies providing human capital

3

management.

17.    Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC, describe themselves in their North Carolina Secretary of State filings as providing payroll and human capital management services.

18.    Upon information and belief, Defendant Infinisource Holdings, Inc., is the holding company for Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC.

19.    On Defendant iSolved HCM, LLC's website, the biography of the chief commercial officer identifies the Infinisource entities and the iSolved entities as "sister companies."

20.    Although Plaintiff was employed working with the iSolved suite of services, her paycheck was issued by Infinisource, Inc.

21.    This Honorable Court has jurisdiction over this matter pursuant to N. C. Gen. Stat. § 7A-243 in that this is a civil action in which the amount in controversy exceeds twenty-five thousand dollars ($25,000.00).

22.    Venue is proper in Mecklenburg County because a substantial part of the events at issue took place in Mecklenburg County and the Company's principal place of business is located in Mecklenburg County.

## Applicability of the Fair Labor Standards Act

23.    At all times relevant herein, the Company comprised an enterprise engaged in interstate commerce, with gross annual sales of at least $500,000.00.

24.    At all times relevant herein, Plaintiff was an employee of the Company within the meaning of 29 U.S.C. §207(a)(1).

4

## Factual Background

25.     The Company provides benefits services, including payroll and human capital management services, to small and mid-sized businesses (hereinafter, "customers").

26.     One category of products the Company offers to its customers is workforce management software used to facilitate payroll, human resources, and time-tracking.

27.     The Company serves customers located within and out of the State of North Carolina.

28.     Plaintiff began working for the Company in August of 2015 as a Payroll Subject Matter Expert ("Payroll SME"), at a pay rate of $24.05 per hour.

29.     In April of 2016, the Company informed Plaintiff that she was getting a raise and would begin earning $24.64 per hour; however, after the processing of the raise, Plaintiff's wage only increased to $24.27 per hour.

30.     The Company classified Plaintiff as an administrative employee, exempt from overtime pay, and paid Plaintiff her regular hourly rate for a set number of hours per week, regardless of the number of hours Plaintiff worked.

31.     As explained herein, Plaintiff's role as a Payroll SME did not involve management or consulting on business decisions, did not allow her the autonomy to choose what work to perform, or even how and when to perform her assigned work, and did not provide her with the authority to make business decisions.

32.     During Plaintiff's employment, the Company revised Plaintiff's job description to include language that indicated her position held the type of discretion and independent judgment necessary for classification as an exempt administrative employee, despite the Company's prohibiting Plaintiff from exercising such discretion and independent judgment, as described herein.

5

33. Upon information and belief, the Company revised Plaintiff's job description in the above-referenced manner in an attempt to avoid liability for unpaid overtime.

34. When SMEs such as Plaintiff ran into issues with customers, Company protocol mandated that they escalate problems to management for resolution.

35. If a customer requested additional products or services beyond their current software package, Company protocol required Plaintiff to refer the customer back to the sales department.

36. As a Payroll SME, Plaintiff provided instruction and technical support to customers regarding importing their payroll into the Company's software.

37. Plaintiff did not advise customers on personnel issues or general business matters.

38. When the Company negotiated and signed a contract with a customer, it would assign the customer to one of several Implementation Teams who carried out the work of setting up the customer's chosen software package and training the customer to use the system.

39. Each Implementation Team was made up of SMEs in Payroll, Benefits, and Time, under the leadership of a Project Manager.

40. As a Payroll SME member of an Implementation Team, Plaintiff did not participate in negotiating sales or contracts with customers, rather her team delivered the products and services the customer had purchased.

41. The Project Manager of each team was responsible for making sure the various SMEs followed the Company's implementation guidelines for their respective duties, remained on track to meet deadlines, and delivered appropriate customer service.

42. When the Company assigned clients to an Implementation Team, the Team was typically given an implementation timeline of either sixty (60) or ninety (90) days, ending on a

6

"go live" date, by which the Company expected the customer to be up and running on the Company's platform.

43. The Company issued detailed instructions for every aspect of the implementation process, including flow charts, process guides, checklists, and "workflows," which were week-by-week breakdowns of itemized tasks, such as when to schedule phone calls with clients and what information to discuss on the calls.

44. The Company required all Implementation Teams to adhere to these schedules in order to meet "go live" deadlines the Company had promised to customers.

45. Sarah Ufen, the Project Manager for Plaintiff's Implementation Team, created and implemented even more specific timelines for Plaintiff and her team, in some cases detailing not only the date but the time of day by which each step of a task must be completed.

46. Plaintiff did not have the authority to deviate from or waive the procedures established by the Company or Ufen.

47. Plaintiff was under the constant supervision of Ufen, and the Company expected Plaintiff to participate in weekly one-on-one meetings with Ufen and provide Ufen with detailed written updates on her progress.

48. In order to keep up with the Company's demands and strict timelines for onboarding customers, Plaintiff had to work more than forty (40) hours per week.

49. At a minimum, Plaintiff worked from 8:00 a.m. to 8:00 p.m. Monday through Friday every week with few exceptions.

50. Many weeknights Plaintiff had to work until midnight or 1:00 a.m. in order to meet deadlines set by the Company and/or Ufen.

51. Upon information and belief, the Company did not keep precise records of

7

Plaintiff's time as required by 29 CFR §516.2, despite the fact that Plaintiff was an employee paid an hourly wage.

52.     In the days leading up to a deadline, Ufen, would push Plaintiff to meet the goal, often requiring around-the-clock work.

53.     Two such instances of around-the-clock work include the times periods of November 3-4 and November 13-14, 2016, when Plaintiff worked forty-eight (48) hour periods without sleep in order to meet project deadlines.

54.     Plaintiff's friends and family became increasingly worried about the long hours she was working and the fatigue and stress she experienced.

55.     Many times between March of 2016, when Ufen assumed direct control over Plaintiff's Implementation Team, and the end of Plaintiff's employment, Plaintiff explained to Ufen that she was having to work "long hours and...weekends," to keep up with the Company's deadlines.

56.     Ufen demonstrated no concern, and in November of 2016 criticized Plaintiff for taking a lunch break on a day when Plaintiff worked from 8:00 a.m. until 9:30 p.m.

57.     On February 20, 2017, Ufen sent Plaintiff an "Employee Performance Warning/Improvement Plan", detailing instances of Plaintiff's failure to conform to Company protocol, such as:

        a)     Responding to e-mails without permission;

        b)     Hanging up on a scheduled conference call after only waiting fifteen (15) minutes for the customer to join, when Plaintiff was calling in from the emergency room with a seriously ill friend;

        c)     Not adhering to the outline of dates and times by which specific

8

tasks should be completed;

d)      Declining a scheduling request sent on 4:30 p.m. Friday to set up a meeting that Monday morning; and

e)      Allowing a next day payroll processing to run without obtaining approval.

58.      The Company terminated Plaintiff's employment effective March 2, 2017.

59.      At the time of her termination, Plaintiff had worked approximately one thousand, one hundred and fifteen (1,115) hours of unpaid overtime for the Company, an average of thirteen (13) hours of overtime per week.

**CAUSE OF ACTION**
**Failure to Pay Overtime Compensation in Violation of the FLSA**
**(All Defendants)**

60.      The preceding paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

61.      At all times relevant, Plaintiff was an employee of the Company within the meaning of the FLSA, 29 U.S.C. § 203(e).

62.      At all times relevant, the Company comprised an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 USC §203(s).

63.      Plaintiff Taylor worked more than forty (40) hours of compensable time per week every week, with few exceptions, from August of 2015 through February of 2017.

64.      The Company willfully, in bad faith, and in knowing or reckless violation of the FLSA, classified Plaintiff as "exempt" from overtime even though she had no discretion or opportunity to exercise independent judgment on matters of significance.

65.      The Company willfully, in bad faith, and in knowing or reckless violation of the

9

FLSA, failed to compensate Plaintiff at the federally mandated rate of one and one-half times her regular hourly wage for each hour in excess of forty (40) hours per week.

66.     The Company had actual and/or constructive knowledge of the hours Plaintiff was working due to Ufen's knowledge of the number of compensable hours Plaintiff was required to work in order to meet the Company's and Ufen's deadlines, and Plaintiff was in fact meeting those deadlines.

67.     The Company failed to make, keep, and preserve records of hours worked by Plaintiff in violation of the FLSA, 29 U.S.C. §201, et seq., and 29 CFR 516.2.

68.     The Company's conduct, as set forth herein, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §255(a).

69.     Plaintiff seeks damages in the amount of her unpaid overtime compensation from August 2015 to the present, liquidated damages in an amount equal to that unpaid overtime, plus interest and costs as permitted by the FLSA, 29 USC §§216(b) and 255(a), an amount in excess of $25,000.00.

70.     Plaintiff seeks recovery of attorney's fees and costs to be paid by the Company, as provided by the FLSA, 29 U.S.C. §216(b).

**Prayer for Relief**

**WHEREFORE,** Plaintiff, Jill Taylor, prays the Court for the following relief:

1.     For Plaintiff, compensatory damages, *inter alia*, lost wages, in excess of twenty-five thousand dollars ($25,000.00);

2.     That the Court find the Company liable for violating the overtime provisions of the FLSA as to Plaintiff;

3.     For judgment against the Company in an amount equal to Plaintiff's unpaid

10

overtime at the federally mandated rate;

4.      That the Court find the Company liable for violating the FLSA by failing to maintain accurate time records of all hours worked by Plaintiff;

5.      That the Court finds the Company's violations of the FLSA as set forth herein to be willful;

6.      For an award to Plaintiff in the amount of unpaid overtime owed, liquidated damages, and penalties as provided by law, with interest thereon, in an amount to be proved at a trial of this matter;

7.      For an award of reasonable attorney's fees and costs pursuant to 29 USC § 216;

8.      For an award of pre-judgment interest;

9.      For such and further relief as the Court deems just and proper.

THIS THE _7th___ DAY OF FEBRUARY, 2018.

SEIFERFLATOW, PLLC

By: _____

MATHEW E. FLATOW
NC State Bar No. 35282

By: _____

ELIZABETH K. VENNUM
NC State Bar No. 49747
Attorneys for Plaintiff Jill Taylor
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

11



**SeiferFlatow**
**Attorneys at Law**

**Elizabeth Vennum**
Attorney
liz@seiferflatow.com

February 6, 2018

<u>**Sent via U.S. Certified Mail**</u>
Infinisource North America, LLC
c/o CT Corporation System
160 Mine Lake Ct, Suite 200
Raleigh, NC 27615-6417

RE:    Jill Taylor v. Infinisource North America, LLC, *et al.*

To whom it may concern:

Enclosed, please find the Summons and Complaint to be served on Defendant Infinisource North America, LLC, in reference to the above-mentioned case.

Sincerely,

Elizabeth Vennum

Enclosure

2319 Crescent Ave, Charlotte, NC 28207
p (704) 512-0606    f (704) 314-0677
www.seiferflatowlaw.com
Licensed in North Carolina

Case 3:18-cv-00124-FDW-DSC   Document 1-1   Filed 03/14/18   Page 44 of 57

# STATE OF NORTH CAROLINA

_____MECKLENBURG_____ County

File No. 18 CVS 2398

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff |
| --- |
| Jill Taylor |
| **Address** |
| c/o SeiferFlatow, PLLC, 2319 Crescent Ave |
| **City, State, Zip** |
| Charlotte　　　　　NC　　　28207 |

**CIVIL SUMMONS**

☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

## VERSUS

| Name Of Defendant(s) |
| --- |
| Infinisource North America, LLC; |
| Infinisource, Inc.; |
| Infinisource Holdings, Inc.; |
| iSolved HCM, LLC; and iSolved Network, LLC. |

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

### To Each Of The Defendant(s) Named Below:

| **Name And Address Of Defendant 1** | **Name And Address Of Defendant 2** |
| --- | --- |
| Infinisource North America, LLC | |
| c/o C T Corporation System | |
| 160 Mine Lake Ct, Ste 200 | |
| Raleigh　　　　NC　　27615-6417 | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued 8.7.18 | Time 10:13 ☒AM ☐PM |
| --- | --- | --- |
| Mathew Flatow | Signature | |
| SeiferFlatow, PLLC | | |
| 2319 Crescent Avenue | | |
| Charlotte, NC 28207 | ☒ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time ☐ AM ☐ PM |
| --- | --- | --- |
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | |
| | ☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** _Many counties have MANDATORY ARBITRATION programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed._

(Over)

AOC-CV-100, Rev. 6/16
© 2016 Administrative Office of the Courts

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/18
© 2016 Administrative Office of the Courts

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG



FILED

2018 FEB -7  A 10: 11

MECKLENBURG CO., C.S.C.

BY_____

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18-CVS-2395

Jill Taylor,

Plaintiff,

v.

Infinisource North America, LLC,

Infinisource, Inc.,

Infinisource Holdings, Inc.,

iSolved HCM, LLC,

and

iSolved Network, LLC

Defendants.

**COMPLAINT**
(Jury Trial Demanded)

Plaintiff, Jill Taylor, by and through the undersigned counsel, hereby brings this action

against Defendants Infinisource North America, LLC, Infinisource, Inc., Infinisource Holdings,

Inc., iSolved HCM, LLC, and iSolved Network, LLC ("Defendants") to recover unpaid overtime

pay, liquidated damages, attorney's fees, and costs from the Defendants pursuant to §216(b) of

the federal Fair Labor Standards Act of 1938 as amended, 29 USC §§ 201 *et seq.* ("FLSA"), for

Defendants' willful violation of the FLSA.

### Parties, Jurisdiction and Venue

1.     **Plaintiff, Jill Taylor (hereinafter, "Plaintiff")** is a citizen and resident of South

Carolina who worked for Defendants at their principal office in Charlotte, North Carolina from

August 2015 through March 2017.

2.     **Defendant, Infinisource North America, LLC** is a Delaware limited liability

1

corporation authorized to do business in the State of North Carolina and with its principal place of business located at 13024 Ballantyne Corporate Place, Charlotte, North Carolina 28277.

3. **Defendant Infinisource, Inc.,** is a Michigan corporation duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

4. On September 29, 2016, **Defendant Infinisource North America, LLC,** through its sole member, **Defendant Infinisource, Inc.,** amended its certificate of authority with the North Carolina Secretary of State to change its name from Infinisource North America, LLC to **iSolved Network, LLC.**

5. **Defendant iSolved Network, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

6. **Defendant Infinisource, Inc.,** is the sole member of **Defendant iSolved Network, LLC.**

7. **Defendant iSolved HCM, LLC** is a Delaware limited liability company duly authorized to conduct business in the State of North Carolina and with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

8. **Defendant, Infinisource Holdings, Inc.** is a Delaware corporation duly authorized to conduct business in the State of North Carolina, with its principal office located at 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

9. Defendants Infinisource North America, LLC, Infinisource, Inc., iSolved Network, LLC, iSolved HCM, LLC, and Infinisource Holdings, Inc., (hereinafter, collectively, the "Company"), constitute a single enterprise or joint employer because they have owners in

2

common, share the same principal office address, share resources, each operate as an alter ego of one another.

10. All Defendants have their principal office in the same location: 13024 Ballantyne Corporate Place, Suite 400, Charlotte, North Carolina 28277.

11. Defendant Infinisource, Inc., lists its officers with the North Carolina Secretary of State as follows:

     a.    David Dawson, Chief Executive Officer;

     b.    Dean Jacobson, Vice President;

     c.    Jody Oliver, President; and

     d.    Shane Whittington, Secretary and Chief Financial Officer.

12. Defendant iSolved Network, LLC, lists is managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

13. Defendant iSolved HCM, LLC, lists its managers with the North Carolina Secretary of State as follows: David Dawson and Dean Jacobson.

14. Defendant Infinisource Holdings, Inc., lists its officers with the North Carolina Secretary of State as follows:

     a.  David Dawson, Chief Executive Officer;

     b.  Dean Jacobson, Vice President, Secretary, and Director; and

     c.  Shane Whittington, Chief Financial Officer.

15. Upon information and belief, a common thread exists regarding the individuals who control the operations of Defendants, as listed with the North Carolina Secretary of State.

16. Defendant Infinisource Holdings, Inc. describes itself in its North Carolina Secretary of State filing as the holding company for various companies providing human capital

3

management.

17.     Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC, describe themselves in their North Carolina Secretary of State filings as providing payroll and human capital management services.

18.     Upon information and belief, Defendant Infinisource Holdings, Inc., is the holding company for Defendants Infinisource, Inc., iSolved HCM, LLC, and iSolved Network, LLC, formerly Infinisource North America, LLC.

19.     On Defendant iSolved HCM, LLC's website, the biography of the chief commercial officer identifies the Infinisource entities and the iSolved entities as "sister companies."

20.     Although Plaintiff was employed working with the iSolved suite of services, her paycheck was issued by Infinisource, Inc.

21.     This Honorable Court has jurisdiction over this matter pursuant to N. C. Gen. Stat. § 7A-243 in that this is a civil action in which the amount in controversy exceeds twenty-five thousand dollars ($25,000.00).

22.     Venue is proper in Mecklenburg County because a substantial part of the events at issue took place in Mecklenburg County and the Company's principal place of business is located in Mecklenburg County.

## Applicability of the Fair Labor Standards Act

23.     At all times relevant herein, the Company comprised an enterprise engaged in interstate commerce, with gross annual sales of at least $500,000.00.

24.     At all times relevant herein, Plaintiff was an employee of the Company within the meaning of 29 U.S.C. §207(a)(1).

4

## Factual Background

25.   The Company provides benefits services, including payroll and human capital management services, to small and mid-sized businesses (hereinafter, "customers").

26.   One category of products the Company offers to its customers is workforce management software used to facilitate payroll, human resources, and time-tracking.

27.   The Company serves customers located within and out of the State of North Carolina.

28.   Plaintiff began working for the Company in August of 2015 as a Payroll Subject Matter Expert ("Payroll SME"), at a pay rate of $24.05 per hour.

29.   In April of 2016, the Company informed Plaintiff that she was getting a raise and would begin earning $24.64 per hour; however, after the processing of the raise, Plaintiff's wage only increased to $24.27 per hour.

30.   The Company classified Plaintiff as an administrative employee, exempt from overtime pay, and paid Plaintiff her regular hourly rate for a set number of hours per week, regardless of the number of hours Plaintiff worked.

31.   As explained herein, Plaintiff's role as a Payroll SME did not involve management or consulting on business decisions, did not allow her the autonomy to choose what work to perform, or even how and when to perform her assigned work, and did not provide her with the authority to make business decisions.

32.   During Plaintiff's employment, the Company revised Plaintiff's job description to include language that indicated her position held the type of discretion and independent judgment necessary for classification as an exempt administrative employee, despite the Company's prohibiting Plaintiff from exercising such discretion and independent judgment, as described herein.

5

33. Upon information and belief, the Company revised Plaintiff's job description in the above-referenced manner in an attempt to avoid liability for unpaid overtime.

34. When SMEs such as Plaintiff ran into issues with customers, Company protocol mandated that they escalate problems to management for resolution.

35. If a customer requested additional products or services beyond their current software package, Company protocol required Plaintiff to refer the customer back to the sales department.

36. As a Payroll SME, Plaintiff provided instruction and technical support to customers regarding importing their payroll into the Company's software.

37. Plaintiff did not advise customers on personnel issues or general business matters.

38. When the Company negotiated and signed a contract with a customer, it would assign the customer to one of several Implementation Teams who carried out the work of setting up the customer's chosen software package and training the customer to use the system.

39. Each Implementation Team was made up of SMEs in Payroll, Benefits, and Time, under the leadership of a Project Manager.

40. As a Payroll SME member of an Implementation Team, Plaintiff did not participate in negotiating sales or contracts with customers, rather her team delivered the products and services the customer had purchased.

41. The Project Manager of each team was responsible for making sure the various SMEs followed the Company's implementation guidelines for their respective duties, remained on track to meet deadlines, and delivered appropriate customer service.

42. When the Company assigned clients to an Implementation Team, the Team was typically given an implementation timeline of either sixty (60) or ninety (90) days, ending on a

6

"go live" date, by which the Company expected the customer to be up and running on the Company's platform.

43. The Company issued detailed instructions for every aspect of the implementation process, including flow charts, process guides, checklists, and "workflows," which were week-by-week breakdowns of itemized tasks, such as when to schedule phone calls with clients and what information to discuss on the calls.

44. The Company required all Implementation Teams to adhere to these schedules in order to meet "go live" deadlines the Company had promised to customers.

45. Sarah Ufen, the Project Manager for Plaintiff's Implementation Team, created and implemented even more specific timelines for Plaintiff and her team, in some cases detailing not only the date but the time of day by which each step of a task must be completed.

46. Plaintiff did not have the authority to deviate from or waive the procedures established by the Company or Ufen.

47. Plaintiff was under the constant supervision of Ufen, and the Company expected Plaintiff to participate in weekly one-on-one meetings with Ufen and provide Ufen with detailed written updates on her progress.

48. In order to keep up with the Company's demands and strict timelines for onboarding customers, Plaintiff had to work more than forty (40) hours per week.

49. At a minimum, Plaintiff worked from 8:00 a.m. to 8:00 p.m. Monday through Friday every week with few exceptions.

50. Many weeknights Plaintiff had to work until midnight or 1:00 a.m. in order to meet deadlines set by the Company and/or Ufen.

51. Upon information and belief, the Company did not keep precise records of

7

Plaintiff's time as required by 29 CFR §516.2, despite the fact that Plaintiff was an employee paid an hourly wage.

52.    In the days leading up to a deadline, Ufen, would push Plaintiff to meet the goal, often requiring around-the-clock work.

53.    Two such instances of around-the-clock work include the times periods of November 3-4 and November 13-14, 2016, when Plaintiff worked forty-eight (48) hour periods without sleep in order to meet project deadlines.

54.    Plaintiff's friends and family became increasingly worried about the long hours she was working and the fatigue and stress she experienced.

55.    Many times between March of 2016, when Ufen assumed direct control over Plaintiff's Implementation Team, and the end of Plaintiff's employment, Plaintiff explained to Ufen that she was having to work "long hours and…weekends," to keep up with the Company's deadlines.

56.    Ufen demonstrated no concern, and in November of 2016 criticized Plaintiff for taking a lunch break on a day when Plaintiff worked from 8:00 a.m. until 9:30 p.m.

57.    On February 20, 2017, Ufen sent Plaintiff an "Employee Performance Warning/Improvement Plan", detailing instances of Plaintiff's failure to conform to Company protocol, such as:

      a)      Responding to e-mails without permission;

      b)      Hanging up on a scheduled conference call after only waiting fifteen (15) minutes for the customer to join, when Plaintiff was calling in from the emergency room with a seriously ill friend;

      c)      Not adhering to the outline of dates and times by which specific

tasks should be completed;

d)      Declining a scheduling request sent on 4:30 p.m. Friday to set up a meeting that Monday morning; and

e)      Allowing a next day payroll processing to run without obtaining approval.

58.    The Company terminated Plaintiff's employment effective March 2, 2017.

59.    At the time of her termination, Plaintiff had worked approximately one thousand, one hundred and fifteen (1,115) hours of unpaid overtime for the Company, an average of thirteen (13) hours of overtime per week.

## CAUSE OF ACTION
### Failure to Pay Overtime Compensation in Violation of the FLSA
### (All Defendants)

60.    The preceding paragraphs are re-alleged and incorporated by reference as though fully set forth herein.

61.    At all times relevant, Plaintiff was an employee of the Company within the meaning of the FLSA, 29 U.S.C. § 203(e).

62.    At all times relevant, the Company comprised an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 USC §203(s).

63.    Plaintiff Taylor worked more than forty (40) hours of compensable time per week every week, with few exceptions, from August of 2015 through February of 2017.

64.    The Company willfully, in bad faith, and in knowing or reckless violation of the FLSA, classified Plaintiff as "exempt" from overtime even though she had no discretion or opportunity to exercise independent judgment on matters of significance.

65.    The Company willfully, in bad faith, and in knowing or reckless violation of the

9

FLSA, failed to compensate Plaintiff at the federally mandated rate of one and one-half times her regular hourly wage for each hour in excess of forty (40) hours per week.

66.     The Company had actual and/or constructive knowledge of the hours Plaintiff was working due to Ufen's knowledge of the number of compensable hours Plaintiff was required to work in order to meet the Company's and Ufen's deadlines, and Plaintiff was in fact meeting those deadlines.

67.     The Company failed to make, keep, and preserve records of hours worked by Plaintiff in violation of the FLSA, 29 U.S.C. §201, et seq., and 29 CFR 516.2.

68.     The Company's conduct, as set forth herein, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. §255(a).

69.     Plaintiff seeks damages in the amount of her unpaid overtime compensation from August 2015 to the present, liquidated damages in an amount equal to that unpaid overtime, plus interest and costs as permitted by the FLSA, 29 USC §§216(b) and 255(a), an amount in excess of $25,000.00.

70.     Plaintiff seeks recovery of attorney's fees and costs to be paid by the Company, as provided by the FLSA, 29 U.S.C. §216(b).

### Prayer for Relief

**WHEREFORE**, Plaintiff, Jill Taylor, prays the Court for the following relief:

1.     For Plaintiff, compensatory damages, *inter alia*, lost wages, in excess of twenty-five thousand dollars ($25,000.00);

2.     That the Court find the Company liable for violating the overtime provisions of the FLSA as to Plaintiff;

3.     For judgment against the Company in an amount equal to Plaintiff's unpaid

10

overtime at the federally mandated rate;

4.     That the Court find the Company liable for violating the FLSA by failing to maintain accurate time records of all hours worked by Plaintiff;

5.     That the Court finds the Company's violations of the FLSA as set forth herein to be willful;

6.     For an award to Plaintiff in the amount of unpaid overtime owed, liquidated damages, and penalties as provided by law, with interest thereon, in an amount to be proved at a trial of this matter;

7.     For an award of reasonable attorney's fees and costs pursuant to 29 USC § 216;

8.     For an award of pre-judgment interest;

9.     For such and further relief as the Court deems just and proper.

THIS THE _____7th_____ DAY OF FEBRUARY, 2018.

SEIFERFLATOW, PLLC

By: _____

MATHEW E. FLATOW
NC State Bar No. 35282

By: _____

ELIZABETH K. VENNUM
NC State Bar No. 49747
Attorneys for Plaintiff Jill Taylor
2319 Crescent Avenue
Charlotte, North Carolina 28207
(704) 512 0606

11